### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREW J. ROSSI, IV** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 16-1111** |
| | : | |
| **NATIONAL RAILROAD PASSENGER** | : | |
| **CORPORATION a/k/a AMTRAK and** | : | |
| **MICHAEL DEVINE** | : | |

### <u>MEMORANDUM OPINION</u>

**Savage, J.**                                                            **May 5, 2016**

Plaintiff Andrew J. Rossi, IV, claims he was unlawfully discharged for engaging in protected activity under the whistleblower provisions of the Federal Rail Safety Act ("FRSA").[1]  Moving to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), defendant National Railroad Passenger Corp., a/k/a Amtrak ("Amtrak"), contends Rossi has not adequately pleaded that he had engaged in a protected activity and that Amtrak knew of his protected activity.

Because Rossi has sufficiently alleged facts supporting a plausible inference that he was engaged in a protected activity and Amtrak fired him for doing so, we shall deny Amtrak's motion.

### Factual and Procedural Background[2]

Rossi began his employment with Amtrak as an electrician in November 2008.[3] While working in Amtrak's asbestos program in 2010,[4] he had an acrimonious

---

[1] 49 U.S.C. § 20109.

[2] The facts are recited from the complaint.  For purposes of considering the motion to dismiss, we accept the facts alleged as true and draw all reasonable inferences from them in Rossi's favor.

[3] Complaint, Doc. No. 1 ("Compl."), ¶ 14.

[4] *Id.*

relationship with defendant Michael Devine, a car repairman in the asbestos program and Rossi's co-worker.   Devine had a history of usurping overtime from other employees in the department through intimidation and threats of physical injury.[5] Devine also performed asbestos work without properly sealing the area.[6]

In December 2011,[7] Devine began working eight hours of overtime every night, leaving none for the other employees.[8]   When Rossi, who had previously worked overtime on a regular basis, informed his supervisors, Devine began making complaints to management about Rossi's behavior and performance.[9]

On February 10, 2012, after Rossi's foreman assigned Rossi three hours of overtime, Devine threatened him in the asbestos room for nearly an hour and boasted of his friendly relations with management.[10]   Rossi informed his union representative, Michael McCulley, about the altercation.[11]   The day after the incident, Rossi and McCulley met with Devine and Bruce Carlton, a member of management, "to discuss the ongoing intimidation."[12]

---

[5] *Id.* ¶¶ 16-21.

[6] *Id.* ¶¶ 26-27.

[7] Rossi refers to December 2012 in Paragraph 23 of the complaint.  It appears, however, that he intended to refer to December 2011 because the ensuing events occurred beginning in February 2012.

[8] *Id.* ¶ 23.

[9] *Id.* ¶¶ 23-24.

[10] *Id.* ¶ 29.

[11] *Id.* ¶ 30; *see id.* ¶ 35.

[12] *Id.* ¶¶ 30-31; *see id.* ¶ 33.

Later the same day, a second meeting was held among Rossi, McCulley, Lou Woods and Terry Schindler.[13]   At that meeting, the investigation of Rossi's complaints was assigned to Carlton.[14]   The following day, Carlton called Rossi into his office and requested that he write down what he had told Woods and Schindler or risk termination.[15]   After McCulley advised him not to comply with Carlton's request, Rossi refused to tell Carlton what had been said at the second meeting.[16]

Rossi developed insomnia, anxiety, irritable bowel syndrome and post-traumatic stress disorder.[17]   On March 3, 2012, Rossi's physician removed him from his job.[18]   In October 2012, Rossi contacted Amtrak's Health Services department to return to work.[19]   He received a letter on November 29, 2012, stating that he had failed to properly notify Amtrak of his condition.[20]   On December 4, 2012, Amtrak terminated his employment.[21]

Rossi claims Amtrak discharged him in violation of the whistleblower provisions of the FRSA.   Moving to dismiss the complaint for failure to state a claim, Amtrak contends Rossi has not adequately alleged that he was engaged in a protected activity or that Amtrak knew of his protected activity.

---

[13] *Id.* ¶ 32.  Rossi does not identify Woods and Schindler.

[14] *Id.* ¶ 33.

[15] *Id.* ¶¶ 34-35.

[16] *Id.* ¶ 35.

[17] *Id.* ¶¶ 36-37.

[18] *Id.* ¶ 37.

[19] *Id.* ¶ 38.

[20] *Id.* ¶ 39.

[21] *Id.*

**Standard of Review**

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiff. *Powell v. Weiss*, 757 F.3d 338, 341 (3d Cir. 2014). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although this standard "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Pleading only "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 557). With these standards in mind, we shall accept as true the facts as they appear in Rossi's complaint and draw all possible inferences from those facts in his favor.

**Analysis**

To establish a prima facie case under the FRSA's whistleblower provisions, the plaintiff must show that: (1) he engaged in a protected activity; (2) the employer knew

that he engaged in a protected activity; (3) he suffered an adverse employment action; and (4) the protected activity was a "contributing factor" in the adverse action. *Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013) (footnote omitted) (citing *Allen v. Admin. Review Bd.*, 514 F.3d 468, 475-76 (5th Cir. 2008)).   Protected activities under the FRSA include informing a supervisor of a perceived "violation of any Federal law, rule, or regulation relating to railroad safety or security."   49 U.S.C. § 20109(a)(1)(C).   The statute also protects employees who, in good faith, report "a hazardous safety or security condition."   § 20109(b)(1)(A).

The issue is whether Rossi has adequately pleaded that he was engaged in a protected activity.   Rossi's complaint to management regarding a fellow worker's usurpation of overtime is not a protected activity under the FRSA.   His complaint about overtime did not relate to railroad safety or security.   Rather, it was about internal employee relations and scheduling. *See, e.g.*, *Hernandez v. Metro-North Commuter R.R.*, 74 F. Supp. 3d 576, 580-81 (S.D.N.Y. 2015) (employee's complaint of other employees' performance of personal tasks on company time did not relate to railroad safety or security).

On the other hand, Rossi's complaint about Devine's failure to seal the area when performing asbestos work was protected activity.   Although the complaint is imprecise, one can infer that during the meetings, Rossi was also calling attention to a hazardous safety condition, which falls within the meaning of § 20109.

Rossi's complaints of Devine's threats and intimidation may also be protected activity because they relate to railroad safety or security. *See, e.g.*, *Rookaird v. BNSF Ry. Co.*, No. 14-176, 2015 WL 6626069, at *5 (W.D. Wash. Oct. 29, 2015) (denying

summary judgment where report that supervisor made threats of physical violence could be protected activity under §§ 20109(a)(1)(C) and (b)(1)(A)).

Amtrak also contends that Rossi has not adequately pleaded the causation element of his cause of action.  It argues that the nine-month lapse between Rossi's protected activity and his termination severs the requisite causal link.  Rossi counters that Amtrak was able to delay his termination due to his health-related absence.

Temporal proximity is a question of fact.  *Araujo*, 708 F.3d at 162.  Rossi has raised a plausible inference that his protected activity was a contributing factor in his termination.[22]  Thus, we cannot dismiss his complaint at this stage.

## Conclusion

Rossi has sufficiently alleged that he was engaged in a protected activity and that his protected activity was a contributing factor in his termination.  Thus, he has stated a claim under § 20109.

---

[22] *See* Compl. ¶¶ 34-44.